IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY ANN ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 22-cv-00405 |
| | ) | |
| v. | ) | |
| | ) | Hon. Judge Charles P. Kocoras |
| UNITED AIRLINES, INC., | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Defendant United Airlines, Inc. submits this Reply to Plaintiff Mary Ann Arnold's Response to Defendant's Motion for Summary Judgment ("Response").

**I.    Introduction**

Plaintiff has not identified any genuine issue of material fact that would preclude summary judgment on her claims that she was subjected to age-based discrimination, harassment and retaliation. Without the need to address any other issues, the incidents Plaintiff complains about — her transfer (along with her entire team) to a new department as part of a reorganization without a change in pay or benefits; having one assignment re-assigned to another employee in connection with the reorganization; being asked to sit on the same floor and in the same area as her team; her supervisors allegedly scrutinizing her work; getting a poor performance review, and being put on a PIP — are not adverse employment actions for discrimination purposes and are insufficient incidents under the "materially adverse" standard for retaliation purposes. Moreover, these incidents fall far short of the type of "severe or pervasive" actions needed to support a hostile work environment claim or the even higher standard to support a constructive discharge claim. Further, Plaintiff cannot even maintain a constructive discharge claim because she failed to administratively exhaust such claim by filing a charge of discrimination alleging constructive discharge (a contention that Plaintiff has waived by not addressing it in her Response). Additionally, it remains undisputed that no one at United ever made any age-related comments or negative comments about Plaintiff's age, and Plaintiff falls far short of meeting the

1

"but for" standard that applies to her age discrimination claims.[1] Plaintiff also fails to create a genuine issue with respect to her *prima facie* case of discrimination or the issue of pretext.

In short, this is a case where Plaintiff simply believed that her job performance was better than several of her managers perceived it to be, and Plaintiff subjectively perceived every effort to address and try to improve her performance as retaliatory simply because she had previously engaged in protected activity and a "conspiracy" among her managers and HR. This is insufficient to create an issue of fact that could preclude summary judgment, and it is undisputed that Plaintiff voluntarily resigned rather than meet with her managers to discuss her performance at the end of the PIP period. Thus, United's summary judgment motion should be granted.

## II.     Plaintiff Has Admitted the Material Facts

In Plaintiff's Response to Defendant's 56.1 Statement of Undisputed Material Facts ("Pl. Resp. to Def. SOF ¶ _"),[2] Plaintiff has not rebutted any of her managers' assessments of her performance and in fact, admits all the performance deficiencies she continued to have during the PIP evaluation period. Among other things, the following material facts remain undisputed:

- Despite giving Arnold an "on track with peers" rating in her 2019 mid-year review, Stephanie Millichap ("Millichap") noted several performance issues and areas for improvement that remained a problem after the reorganization, including noting that Arnold should focus on creating timelines, sticking to deadlines, developing her presentation skills and executive presence, and developing the skill of "end-to-end project ownership" including "proactively seeking information and answers, creating structure, setting deadlines and following up with your partners in order to get things done." (Def. SOF ¶¶ 27-28; Pl. Resp. to Def. SOF ¶¶ 26-27.) In fact, prior to the Corporate Communications Department reorganization in September 2019, Millichap was so concerned about Arnold's performance deficiencies that she addressed them with Genesis Tirado ("Tirado") in HR. (Def. SOF ¶ 30; Pl. Resp. to Def. SOF ¶ 29.)

- Arnold was given a "partially meets" evaluation for 2019 year-end and put on a PIP. (Def. SOF ¶¶ 33, 38; Pl. Resp. to Def. SOF ¶¶ 32, 37.) The decisions to give her a

---

[1] In fact, by asserting that the alleged retaliation was attributable to *both* her age-related activity and her complaints about alleged sexual harassment, Plaintiff cannot meet the "but for" causation standard as a matter of law. Further, the bulk of Plaintiff's complaints relate to her sexual harassment complaint about Stephen Jones ("Jones") and her seating in alleged proximity to Jones. However, Plaintiff cannot use a sexual harassment complaint as the predicate for an age-based retaliation claim, an argument that Plaintiff also failed to respond to and has, therefore, waived.

[2] In Pl. Resp. to Def. SOF, Plaintiff skipped paragraph ¶ 14 of Defendant's 56.1 Statement of Undisputed Material Facts ("Def. SOF") and erroneously responded as ¶ 14 to what was alleged in Def. SOF ¶ 15. As a result, starting with Def. SOF ¶ 14, every paragraph of Pl. Resp. to Def. SOF is misnumbered by one paragraph.

partially meets and to put her on a PIP were made by Courtney Schall ("Schall"), Laura Patterson ("Patterson"), Millichap and Dana Reinglass. (Def. SOF ¶ 38; Pl. Resp. to Def. SOF ¶ 37.)

- In the 2019 year-end review, Schall addressed many performance deficiencies. (Def. SOF ¶ 34; Pl. Resp. to Def. SOF ¶ 33.) From Schall's perspective, she was noticing the same performance issues with Arnold that Millichap had been observing and she thought Arnold's work performance was "subpar, at very best" (Def. SOF ¶¶ 36-37; Pl. Resp. to Def. SOF ¶¶ 35-36.)

- With respect to what her managers included in the PIP under performance deficiencies and behavioral/skill deficiencies, Arnold does not dispute them but admits that she "can't recall" whether these deficiencies were legitimate assessments of her performance. (Def. SOF ¶ 43; Pl. Resp. to Def. SOF ¶ 42.)

- During the PIP period, Schall and Patterson had periodic meetings with Arnold to talk about her performance and how she was progressing against the PIP, and Schall continued to have regular one-on-one meetings with Arnold. (Def. SOF ¶ 45; Pl. Resp. to Def. SOF ¶ 44.)

- At the time of the PIP check-in on April 23, 2020, less than a month before Arnold resigned, she was admittedly deficient in at least 9 different performance items she was asked to complete as part of her PIP. (Def. SOF ¶ 50; Pl. Resp. to Def. SOF ¶ 49.) This included missing deadlines and submitting written work product that was missing required parts or was inaccurate and had to be corrected. (Def. SOF ¶¶ 46-51; Pl. Resp. to Def. SOF ¶¶ 45-50.)

- On May 20, 2020, before the final meeting at which Schall and Patterson were to give their final feedback on the PIP deliverables, Arnold sent an email announcing her retirement. (Def. SOF ¶ 55; Pl. Resp. to Def. SOF ¶ 54.)

- Prior to the time Arnold submitted her retirement email on May 20, 2020, no one at United told Arnold that she was terminated or going to be terminated. (Def. SOF ¶ 56; Pl. Resp. to Def. SOF ¶ 55.)

- No one at United ever made any age-related comments or negative comments about Arnold's age. (Def. SOF ¶ 69; Pl. Resp. to Def. SOF ¶ 68.)

- Although a PIP is not "discipline," United's system did not require progressive discipline, and the PIP process could be used at the discretion of an employee's leaders. (Pl. Resp. to Def. SOF ¶ 7.) Arnold understood that each performance-related issue at United is handled on a case-by-case basis. (*Id*. ¶ 11.)

### III. United is Entitled to Summary Judgment on Plaintiff's Age Discrimination Claim

The undisputed evidence in this case would not permit a reasonable jury to conclude that Plaintiff's age was the "but for" cause of any employment action she challenges. In fact, Plaintiff fails to establish three of the four prongs of her *prima facie* case of discrimination – that she suffered an adverse employment action, that she was meeting United's legitimate expectations,

3

or that a similarly-situated employee outside her protected class was treated more favorably. Even assuming Plaintiff could establish a *prima facie* case of age discrimination, she has not shown any genuine issue of pretext with respect to United's legitimate, non-discriminatory explanation for the actions she claims were age discrimination.

### A. **Plaintiff Has Not Established a *Prima Facie* Case of Age Discrimination**

In her Response, Plaintiff contends that her age discrimination claim is based on the following alleged incidents: (1) a Core4 project was reassigned during the reorganization from her to an allegedly younger employee and Plaintiff was shifted to other projects with purported less visibility; and (2) she was placed on a PIP. (Pl. Resp., p. 7.) Initially, Plaintiff's age discrimination claim fails because these alleged incidents are simply not adverse employment actions. *See, e.g., Hirsch v. Cognizant Tech. Solutions,* 2023 WL 3320285, *6 (N.D. Ill. May 9, 2023) (To qualify as an adverse employment action, the action must be "one that is materially adverse, meaning that *more than* a mere inconvenience or *an alteration of job responsibilities*.") (internal citation omitted) (emphasis added); *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (placement on a PIP "is simply not materially adverse in the discrimination context"). Accordingly, summary judgment on Plaintiff's age discrimination claim is warranted on this basis alone.

Further, the record is clear that Plaintiff was not meeting United's legitimate expectations at the time she received the PIP. While admitting to her performance deficiencies, Arnold claims that her PIP was age discrimination because she never received coaching or feedback prior to the PIP consistent with these perceived deficiencies. (Pl. Resp., pp. 6-7.) This is not supported by the record. First, as noted, it is undisputed that Millichap's 2019 mid-year review noted several performance issues and areas for improvement for Plaintiff that remained a problem after the reorganization. (Def. SOF ¶¶ 27-28; Pl. Resp. to Def. SOF ¶¶ 26-27.) Arnold also admits to having weekly one-on-one meetings with Schall before the PIP that continued during the PIP period. (Def. SOF ¶¶ 45, 64; Pl. Resp. to Def. SOF ¶¶ 44, 63.) Additionally, with respect to the February 2020 emails in which Schall noted deficiencies in the communication piece for Jim DeYoung, including that Arnold had the wrong month and had left out the Leader message (Def.

4

SOF ¶¶ 46-49; Pl. Resp. to Def. SOF ¶¶ 45-48), Arnold admits that Schall had previously raised these types of deficiencies with Arnold. (Def. SOF ¶ 49; Pl. Resp. to Def. SOF ¶ 48.) Arnold also admits that prior to being put on the PIP, Schall gave her project specific feedback on her work. (Def. SOF ¶ 64; Pl. Resp. to Def. SOF ¶ 63.) Arnold also admits occasions where Schall or Patterson sent her emails on projects where they conveyed things that could have been done differently or where Arnold could have improved in her performance. (Def. SOF ¶ 68; Pl. Resp. to Def. SOF ¶ 67.) And as noted, with respect to what her managers included in the PIP under performance deficiencies and behavioral/skill deficiencies, Arnold does not dispute them but admits that she "can't recall" whether these deficiencies were legitimate assessments of her performance. (Def. SOF ¶ 43; Pl. Resp. to Def. SOF ¶ 42.)

      Finally, Plaintiff also has failed to meet her burden of identifying any similarly situated substantially younger employee who was treated more favorably than her. With respect to the Core4 project reassignment, the allegedly younger employees[3] on the newly-created operations team were not similarly situated to her, as that team handled large integrated campaigns and projects that spanned across many operations teams, whereas Arnold's team focused on a single operations – Airport Operations. (Def. SOF. ¶ 71.) As for the PIP, Plaintiff's attempts to compare herself to an allegedly similarly situated "Comparable Coworker" (hereinafter "Coworker") are unavailing because there were significant differences in Plaintiff's performance and the Coworker's performance. After the reorganization, both Plaintiff and the Coworker reported to Schall as senior writers with similar job duties. (Schall Dep. Vol I, p. 50.) Schall testified that at the end of 2019, she participated in a calibration process where the performance of her direct reports was considered, including Arnold and the Coworker who were both at Level 5. (Schall Dep. Vol. II, pp. 73-74.) In making her assessments of Arnold and the Coworker, Schall looked at prior performance reviews for each and had conversations with their prior managers, as Arnold and the Coworker had only started reporting to Schall in September 2019.

---

[3] Plaintiff provides no record evidence of the ages of such employees and thus, has not demonstrated that either were substantially younger than her.

(*Id*. at pp. 74-77.) For her year-end 2019 performance evaluation, the Coworker received an overall rating of "meets expectations" and was not put on a PIP because PIPs are not used for employees who are meeting expectations. (*Id*. at pp. 78-79.) Schall did note some issues the Coworker had with her overall attitude and demeanor when she got last minute requests on assignments, however, the Coworker took that feedback and made positive changes. (*Id*. at pp. 75-76.) The Coworker also missed deadlines at times, but she was communicative with Schall about making adjustments and reestablishing deadlines. (*Id*. at p. 121.) By contrast, Arnold was not being good at communicating about changes to a plan, reestablishing the plan. (*Id*.) The performance issues that Schall and the other managers were seeing with Arnold were systemic issues that Arnold repeated over and over consistently over time. (*Id*. at pp. 121-122.) These kinds of systemic performance issues were not observed with the Coworker. (*Id*. at p. 122.)[4]

Additionally, Plaintiff's attempt to rely on the Coworker as a comparator also fails because the Coworker is not substantially younger than Plaintiff. (Def. Reply to Pl. Add'l Facts, ¶ 8.) To state a *prima facie* case of age discrimination, a plaintiff must show that "similarly situated and *substantially younger employees* were treated more favorably." *Brooks v. City of Pekin,* 2023 WL 3355320, *25 (C.D. Ill. May 10, 2023) (emphasis in original) (*citing Fisher v. Wayne Dalton Corp.,* 139 F.3d 1137, 1142 (7th Cir. 1998)). "To be considered substantially younger, a comparator ordinarily must ordinarily be at least ten years younger than the plaintiffs." *Brooks,* 2023 WL 3355320, at *25 (citing *Kariotis v. Navistar Int. Trans. Corp.,* 131 F.3d 672, 676 n.1 (7th Cir. 1997) (age difference of less than ten years presumed insubstantial). Here, the Coworker is less than seven years younger than Plaintiff. (Def. Reply to Pl. Add'l Facts, ¶ 8.) Such an age gap is "presumptively insubstantial", and Plaintiff has presented no evidence that age was considered in the challenged decisions. *See Harms v. Astrue*, 2010 WL 4539449, *7 (N.D. Ill. Nov. 3, 2010). Accordingly, the Coworker is not a valid comparator.

---

[4] Additionally, Schall testified that she probably gave Arnold far *less* work to do than the Coworker because Arnold was a far poorer and far less reliable performer. (*Id*. at pp. 50-51.)

### B. Plaintiff Has Not Established Pretext

Even if Plaintiff could establish a *prima facie* case of age discrimination (which she cannot), she has not presented evidence sufficient to enable a reasonable fact finder to conclude that United's proffered explanation for its decisions in question are a pretext for age discrimination. *See Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) ("An inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness."). As discussed below, there is no question of material fact.

United has articulated legitimate, non-discriminatory reasons for reassigning the Core4 tasks, *i.e.,* Core4 was essentially complete[5] and as part of the reorganization and for efficiency, a newly-created team was charged with managing projects that spanned across many operations teams (as opposed to just one team), and Patterson added responsibility for any remaining Core4 tasks, along with multiple operations-wide type projects that Plaintiff was not involved with, to that team. (Def. SOF at ¶ 71.) Plaintiff offers no evidence to call into question any of these facts, but rather simply cites her own testimony that someone she believes to be younger was assigned the Core4 project after the reorganization, and that certain unidentified business partners had praised her work on that project and allegedly were confused by the fact that she was taken off the project. (Def. SOF ¶ 72; Pl. Resp. to Def. SOF ¶ 71.) However, it is well-established that it is the assessment of her supervisors, not other employees, that matters. *See, e.g., Cyrus v. Union Pacific R.R. Co.,* 2015 WL 5675073, *5 (N.D. Ill. Sept. 24, 2015); *see Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 397-98 (7th Cir. 1998) (For purposes of the pretext analysis, "it is the perception of the decisionmaker," that is relevant). Further, Patterson did not know or consider the ages of the members of the team in making her decision regarding the reorganization and reassignment of the Core4 tasks.[6]

---

[5] In her Complaint in this case, Plaintiff admits that at the time of the restructure, the Core4 project was almost "85% complete". (Arnold Dep., Ex. 29, ¶ 21.)

[6] Defendant's SOF at ¶ 72 contains an inadvertent typographical error and should state that "Patterson was not aware of and did *not* consider the ages of the members of that team and did not consider Arnold's age." (Def. SOF at ¶ 72.) Given the context of the present suit and its claims, and the correct proposition reflected in Patterson's signed declaration (Patterson Decl., ¶ 7), said typographical error does not create a genuine factual dispute. *See, e.g.*, *Buchanan v. McCann*, 2011 WL 4837279, n.3 (N.D. Ill. Oct. 12, 2011) (holding that typographical error in

With respect to United's decision to issue Plaintiff a PIP for her struggling performance, Plaintiff unsuccessfully tries to establish pretext by arguing that she had a long history of satisfactory year-end and mid-year reviews, and that the Coworker had similar feedback on her 2019 year-end evaluation. (Pl. Resp., p. 8.) First, in determining whether an employee was meeting legitimate employment expectations, the court must view Plaintiff's "job performance through the eyes of [her] supervisors at the time of the adverse employment action." *See, e.g., Cyrus,* 2015 WL 5675073, at *5; *Jankovich v. Exelon Corp.*, 73 F. App'x 881, 883-84 (7th Cir. 2003) (stating that "an unblemished work record for most of [the plaintiff's] career" is irrelevant if she was not meeting employer expectations at the time she was terminated). Further, as explained above, Plaintiff and the Coworker are not valid comparators because Schall believed Plaintiff's performance was far worse.

Plaintiff also attempts to show pretext by claiming Tirado put "a great deal of pressure" on Plaintiff's leaders to put her on a PIP rather than a Letter of Expectation or "LOE." (Pl. Resp., p. 11.) This argument is not supported by the record. Tirado was merely "suggesting" that they move forward with a PIP, and expressed her opinion that in Plaintiff's case, they had "sufficient information to start moving forward with a PIP." (Tirado Dep., p. 66.) There is no evidence that any of Plaintiff's leaders favored an LOE over a PIP, as Schall merely mentioned that Plaintiff had said something to her about an LOE and Schall asked if she could get more information on an LOE, to which Tirado replied, "Sure thing." (*Id.*) Tirado subsequently followed up by sending the managers written information on the LOE and PIP processes, and expressed her opinion that in Arnold's case, they had "sufficient information to start moving forward with a PIP." (Tirado Dep., p. 71.)[7] Schall testified that the decision to issue Plaintiff a PIP, as opposed to some other action, was because of the deficiencies they were seeing with Plaintiff, and because of Plaintiff's

---

statement of material facts that listed an incident date as August 18, 2008 instead of August 15, 2008, as listed in the complaint, did not create a genuine factual dispute). Moreover, Patterson could not have considered the ages of members of the team because she was not aware of their ages. (Def. SOF at ¶ 72.)

[7] Ultimately, the final determination to list Arnold as partially meeting expectations and to put her on a performance improvement plan was made collaboratively by Schall, Patterson, Millichap and Reinglass, not by Tirado. (Def. SOF ¶ 38; Pl. Resp. to Def. SOF ¶ 37.)

8

"need for so much structure and direction" that a PIP "would be the best way to get her to the place that she needed to be most effectively and that moving forward with a [PIP] sooner rather than later would only help her." (Def. Reply to Pl. Add'l Facts, ¶ 24.)[8] Moreover, there is nothing sinister about Tirado believing that a PIP was warranted in this case given that she was very familiar with Arnold's performance deficiencies going all the way back to Millichap meeting with her about Millichap's concerns with Arnold's performance before the reorganization. (Def. SOF ¶ 40.) *See also Hague v. Thompson*, 436 F.3d 816, 828 (7th Cir. 2006) (concluding that the employer did not violate policy of progressive discipline where handbook reserved for employer exercise its discretion).[9]

Further, Plaintiff attempts to show pretext by claiming that Tirado tried to prevent a "paper trail" with respect to certain emails about Plaintiff. (Pl. Resp., p. 11.) However, this is not what Tirado said. Rather, Tirado suggested at one point that matters be discussed over the phone based on her "best practices, it's more efficient and effective to communicate live through a discussion." (Tirado Dep., p. 30.) When asked if this was also a way to hide discussions that you're having about an employee, Tirado replied, "I can't answer that. That's not my practice." (*Id*. at p. 38.)[10]

---

[8] Despite Plaintiff's admissions that at the time of the PIP check-in on April 23, 2020, less than a month before she resigned, she was deficient in at least nine different performance items in her PIP (Def. SOF ¶ 50; Pl. Resp. to Def. SOF ¶ 49), Plaintiff somehow claims that she successfully completed the PIP. Again, however, Plaintiff's subjective belief that she was performing her job adequately "is not relevant to the question of whether [United] believed it had a legitimate non-discriminatory basis" for taking the challenged actions. *See Lauth v. Covance*, 863 F.3d 708, 715-716 (7th Cir. 2017). In any event, Schall sent Arnold an email on May 15, 2020, communicating certain areas where Arnold had not performed satisfactorily during the PIP period, including not meeting deadlines and delivering things late only after reminders were given. (Def. SOF ¶ 52; Pl. Resp. to Def. SOF ¶ 51.) If Arnold wished to argue that she had successfully completed the PIP, she robbed herself of that opportunity by resigning before the final PIP meeting.

[9] Although a PIP is not "discipline," United's system did not require progressive discipline, and the PIP process could be used at the discretion of an employee's leaders. (Pl. Resp. to Def. SOF ¶ 7.) Arnold understood that each performance-related issue at United is handled on a case-by-case basis. (*Id*. ¶ 11.)

[10] Later, in an email about Arnold's seating situation, Tirado indicated that she was "somewhat intentionally being vague via email" because she wanted to make sure she had the conversation over the phone. (*Id*. at p. 41.) When asked whether this was to prevent there being a paper trail, Tirado did not say this was the case, but responded, "I'd be speculating, but maybe." (*Id*.) The mere fact that an HR representative favored a best practice of discussing sensitive personnel information in a live discussion does not show pretext. And again, it is undisputed that the

Arnold asserts that Tirado, Michelson , Patterson and Reinglass met "in October 2019" and "conspired to create performance issues for" Arnold. (Pl. Resp., p. 3.) The record does not support any such conspiracy or the "creation" of performance issues.[11]

Finally, there is no evidence that Plaintiff's age was the "but for" cause of any of the decisions in question. Plaintiff admits that other than one alleged comment from Michelson, an HR employee, asking Plaintiff about her seniority, which Plaintiff believes is evidence of age discrimination, no one at United ever made any age-related comments or negative comments about her age. (Def. SOF ¶ 69; Pl. Resp. to Def. SOF ¶ 68.) Plaintiff claims that on that one occasion, Michelson allegedly asked Plaintiff when meeting her for the first time what her seniority was while sharing that she had "only been with the company for a short time." (*Id.*) Even if true, asking an employee how long she had been with the company during an initial conversation – and sharing how long she (Michelson) had been with the company – were plainly routine pleasantries and not indicative of age discrimination. In her Response, Plaintiff now also contends that, "in a later meeting regarding Arnold's complaint about being forced to work in proximity with Stephen Jones," Michelson allegedly told Plaintiff that she would have to decide if she wanted to continue working for United. (Pl. Resp., pp. 8-9.) First, it is unclear how such alleged remark is indicative of age discrimination. In any event, Michelson's alleged comments are at most simply "stray remarks" by a non-decisionmaker and "insufficient to establish that a particular decision was motivated by discriminatory animus.'" *See Outley v. City of Chicago,* 354 F. Supp. 3d 847, 866-67 (N.D. Ill. 2019) (citation omitted). There is no evidence that Michelson made any of the decisions Plaintiff challenges.

---

decision to list Arnold as partially meeting expectations and to put her on a PIP was made collaboratively by Schall, Patterson, Millichap and Reinglass, not by Tirado. (Def. SOF ¶ 38; Pl. Resp. to Def. SOF ¶ 37.)

[11] As previously noted, it is undisputed that months before the reorganization, Millichap's 2019 mid-year review noted several performance issues and areas for improvement for Plaintiff that remained a problem after the reorganization. (Def. SOF ¶¶ 27-28; Pl. Resp. to Def. SOF ¶¶ 26-27.) In fact, prior to the reorganization, Millichap was so concerned about Arnold's performance deficiencies that she addressed them with Tirado. (Def. SOF ¶ 30; Pl. Resp. to Def. SOF ¶ 29.) And as noted, with respect to what her managers included in the PIP under performance deficiencies and behavioral/skill deficiencies, Arnold admits that she "can't recall" whether these deficiencies were legitimate assessments of her performance. (Def. SOF ¶ 43; Pl. Resp. to Def. SOF ¶ 42.)

IV.     **United is Entitled to Summary Judgment on Plaintiff's Age-Based Retaliation Claim**

To survive summary judgment on her retaliation claims under the ADEA, Plaintiff must show that the record evidence would permit a reasonable factfinder to conclude that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a "causal link" between the two. *See, e.g., Harbeck v. Baxter Healthcare Corp.*, 2019 WL 1382070 (N.D. Ill. March 27, 2019). Plaintiff falls far short of establishing an age-based retaliation claim.

Plaintiff's claims in this case are brought under age discrimination statutes only. As United argues in its Memo in Support of its Motion for Summary Judgment ("Def. Mem."), Plaintiff cannot rely on her sexual harassment complaint as the "statutorily protected activity" for her retaliation claim under the ADEA because "[f]or a complaint to qualify as protected activity under [the ADEA], it must specifically refer to *age* discrimination .…" *Sanford v. Comcast Cable Comm'ns Mgmt., Inc.,* 2019 WL 3555027, *1 (N.D. Ill. Aug. 5, 2019) (emphasis added) (granting summary judgment on ADEA retaliation claim where the plaintiff failed to establish that he complained about age discrimination). (*See* Def. Mem., pp. 10-11.) In her Response, Plaintiff fails to respond to United's argument or present alternative caselaw, implicitly agreeing with that proposition. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the [plaintiff has] done here—results in waiver."); *Roe-Midgett v. CC Serv.,* Inc. 512 F.3d 865, 876 (7th Cir. 2008) (noting that underdeveloped argument constitutes waiver).

At her deposition, Plaintiff testified that her retaliation claim was predicated on two complaints, only one of which was based on age: her internal 2017 complaint that her then-supervisor Danyle Hawkins was targeting Plaintiff for furlough based on her age (Def. SOF at ¶ 12.) In her Response, Plaintiff now contends that with respect to age, she also engaged in protected activity when she made internal complaints about the Core4 project being taken away and given to a younger employee. (Pl. Resp., p. 9.) In any event, Plaintiff's 2018 sexual harassment complaint against Jones, or any subsequent concerns she may have raised related to that sexual harassment complaint, including her subsequent seat assignment complaints related to Jones, do not and cannot serve as protected activity for purposes of her age-based retaliation

11

claim. *See Smith v. Lafayette Bank & Trust Co.,* 674 F.3d 655,658 (7th Cir. 2012) ("In order for Smith's complaints to constitute protected activity, they must include an objection to discrimination on the basis of *age*.") (*citing* 29 U.S.C. § 623) (emphasis added); *Lauth,* 863 F.3d at 717 (same) (granting summary judgment on age discrimination and retaliation claims).

Further, the incidents Plaintiff complains about — her transfer to a new department as part of a reorganization without a change in pay or benefits; having one assignment re-assigned to another employee in connection with the reorganization; being asked to sit on the same floor and in the same area as her team; her supervisors allegedly scrutinizing her work; getting a poor performance review, being put on a PIP — are insufficient incidents under the "materially adverse" standard for retaliation purposes. *See, e.g., id.* (Plaintiff's retaliation "argument mistakenly assumes that his negative performance reviews, Marsh's written warning in 2012, and her PIP in 2012, all constitute adverse actions. These are not adverse actions…."); *Hirsch,* 2023 WL 3320285, *12 (finding the following were not adverse actions for the plaintiff's age retaliation claim: "reassignment to an inferior supervisor. . .. placement in a new and less desirable work assignment; removal of certain responsibilities while being denied the necessary resources to complete her work; and her negative performance review, resulting in a PIP").

Plaintiff has not come close to establishing that any of the incidents she points to would not have occurred "but-for" her age discrimination complaints. *See Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011) ("Under the ADEA retaliation must be the but-for cause of the materially adverse action, not merely a contributing factor.") Plaintiff was reasonably and legitimately held accountable for her poor job performance, and there is no evidence to suggest that Plaintiff's supervisors' decisions to issue her a PIP or provide her with performance-related feedback in late 2019 and 2020 or any of the other incidents Plaintiff takes issue with were motivated by an internal age discrimination complaint Plaintiff filed back in 2017, Plaintiff's complaints about reassignment of the Core4 project or any other protected activity.

In her Response, Plaintiff tries to raise an inference of causal connection to support her retaliation claim by claiming suspicious timing, that the Coworker was similarly situated to

Plaintiff and was treated better, and that the reasons given by leadership that Plaintiff had performance issues are a pretext. For the reasons discussed above, the Coworker is not substantially similar to Plaintiff, and Plaintiff has failed to provide evidence of pretext related to her performance evaluation or her PIP. With respect to her suspicious timing contention, Plaintiff refers to alleged incidents related to Jones, including her seating arrangement in reference to Jones. (Pl. Resp., pp. 10-11.) However, these alleged events have nothing to do with Plaintiff's *age-based* retaliation claim. In fact, Plaintiff's belief that any alleged retaliation against her was at least also motivated by her sexual harassment complaint dooms her theory that her age-related protected activity was the "but for" cause of the retaliation. *See, e.g., Arora v. Nav. Consulting, Inc.*, 2022 WL 7426211, *2-3 (N.D. Ill Oct. 13, 2022) (a plaintiff cannot rely on multiple theories of discrimination under a "but for" cause standard).

There is insufficient evidence to reasonably conclude that Plaintiff was retaliated against for her protected activity based on age, or otherwise. Plaintiff's retaliation claim fails.

**V.     United is Entitled to Summary Judgment on the Hostile Work Environment Claim**

To establish a hostile work environment claim, a plaintiff must show: "(1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Hambrick v. Kijakazi,* 2023 WL 5319242, *5 (7th Cir. 2023). "An employer creates a hostile work environment when 'the workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*

The incidents Plaintiff alleges in support of her claim are simply not severe or pervasive under this standard. In Defendant's Mem., United cited a number of cases where courts have held that these type of incidents are insufficient (Def. Mem., pp. 13-14)[12], and Plaintiff made no

---

[12] *See, e.g., Hambrick,* 2023 WL 5319242, at *5 (finding that "heavy workload", "management's high expectations" and "weekly touch point meetings" did not support a hostile environment claim); *Hobbs v. City of Chicago,* 573 F.3d 454, 464 (7th Cir. 2009) ("No reasonable jury could conclude that being assigned duties that were part of one's job description…amount[s] to a hostile work environment.").

13

attempt to distinguish any of those cases and failed to cite any other cases supporting a finding of severe or pervasive based on similar allegations.

Additionally, Arnold fails to show, as she must, that any of the alleged harassing incidents were *based on* her age or her age-based protected activities. *See Hambrick,* 2023 WL 5319242, at *5 (summary judgment granted where plaintiff "failed to show that she suffered severe or pervasive harassing workplace conduct on account of her …age"). There is no evidence that anything done was based on Arnold's age or any age-based complaints.

### VI. United is Entitled to Summary Judgment on Plaintiff's Constructive Discharge Claim as Such Claim is Unexhausted and Fails in any Event.

It is undisputed that Plaintiff filed her discrimination Charge with the IDHR on March 2, 2020, *before* she sent her May 20, 2020 retirement email, and that she never filed a subsequent or amended charge. (Def. SOF ¶ 78; Pl. Resp. to Def. SOF ¶ 77.) Accordingly, her constructive discharge allegation is beyond the scope of her Charge and must be dismissed for failure to exhaust administrative remedies. S*ee, e.g., Gordon v. DeJoy,* 2023 WL 4762595, *4 (N.D. Ill. July 25, 2023) ("[D]istrict courts have routinely found constructive discharge claims unexhausted if the EEOC Charge was filed prior to the plaintiff's resignation and the plaintiff did not amend her charge or otherwise bring the resignation to the EEOC's attention during the investigation process."). Plaintiff also failed to respond to United's exhaustion argument, resulting in a waiver of this argument. *See, e.g., Bonte*, 624 F.3d at 466.

In any event, even if Plaintiff had not failed to exhaust her constructive discharge claims the alleged incidents on which she bases her claim that her resignation was a constructive discharge, simply don't rise to the necessary level. Plaintiff again has not attempted to distinguish Defendant's cases or cite any others with similar facts where a constructive discharge was found. As noted above, these incidents fall far short of a hostile work environment, and Plaintiff certainly has not shown "a work environment that is even more egregious than that needed for a hostile work environment claim." *Kinney v. St. Mary's Health, Inc*., 76 F.4th 635, 648 (7th Cir. Aug. 7, 2023). Nor has she shown that her work conditions were so intolerable, in a

discriminatory way, that a reasonable person would have been compelled to resign. *See id.*[13]

Plaintiff argues that even if the alleged work environment does not rise to the level of a hostile work environment, her constructive discharge claim can still survive summary judgment "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002) (Pl. Resp., p. 15.). Plaintiff's evidence does not support this theory. The incidents alleged do not rise to the level necessary for a reasonable employee in Plaintiff's position to believe that had she not resigned, she would have been terminated discriminatorily. It is undisputed that Plaintiff opted to resign before the final PIP meeting and that no one told her she was terminated or going to be terminated before she resigned. (Def. SOF ¶¶ 54-56; Pl. Resp. to Def. SOF ¶ 53-55.) Plaintiff's allegations of being placed on a PIP with customary performance monitoring and feedback is vastly different from the case Plaintiff cites for this proposition, where the court looked to the employer's actions and found "*most significantly*, when [the plaintiff] arrived at work, her belongings were packed and her office was being used for storage." *See Univ. of Chicago Hosps.*, 276 F.3d at 326 (emphasis added). Plaintiff's allegations certainly are not of the egregious nature required to support a reasonable conclusion that she would be imminently terminated as contemplated in the case she cites had she not resigned her employment. Further, Plaintiff has not shown, as she must under any test, that she "was forced to resign because th[e] working conditions, from the standpoint of the reasonable employee, had become unbearable." *Chapin v. Fort-Rohr Motors*, 621 F.3d 673, 679 (7th Cir. 2010) ("And a working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.'") (citation omitted).

---

[13] Arnold argues that she "involuntarily retired" based, in part, on the alleged "refusal of upper management and HR to help remedy the harassment". (Pl. Resp., p. 6.)  It is undisputed that all of Plaintiff's complaints were investigated, including by Tirado and Nettles, and were found to be without merit. (Def. SOF ¶¶ 13, 14, 61; Pl. Resp. to Def. SOF ¶¶ 13, 60; and Def.'s Reply to Pl. Add'l Facts, ¶¶ 18, 38, 40.) Arnold's subjective opinion that she was being harassed and that United was not helping her because she disagreed with these investigative findings does not create a genuine issue of material fact.

## VII. <u>CONCLUSION</u>

For all the foregoing reasons, Defendant respectfully submits that it is entitled to summary judgment as a matter of law on each of Plaintiff's claims.

Dated: December 7, 2023

Respectfully submitted,

By: <u>/s/ Alan S. King</u>
Alan S. King, Esq. (ARDC #06198223)
Noreen H. Cull, Esq. (ARDC # 06229417)
Jasmine D. Morton, Esq. (ARDC # 6321171)
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: 312.471.8700

**Counsel for Defendant
United Airlines, Inc.**